**UNITED STATES DISCTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| Cassandra Woods,<br><br>                     Plaintiff,<br><br>        -v-<br><br>START Treatment & Recovery Centers, Inc.,<br><br>                     Defendant. | **Civil Action #: 13-CV-4719 (AMD)(SMG)**<br><br><br>**OPPOSING MEMORANDUM OF LAW**<br>**(Motion in Limine)** |

**PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT'S MOTION IN LIMINE.**

ABDUL HASSAN LAW GROUP, PLLC
By: Abdul K. Hassan, Esq.
*Counsel for Plaintiff*
215-28 Hillside Avenue,
Queens Village, NY 11427
Tel: 718-740-1000

SERVED ON MARCH 7, 2016

## TABLE OF CONTENTS

*Page*

Table of Contents ............................................................................................................... i

Table of Authorities .......................................................................................................... iii

I.   PRELIMINARY STATEMENT ................................................................................ 1

II.  ARGUMENT .............................................................................................................. 3

  1.   DEFENDANT'S ARGUMENTS ABOUT CAUSATION AND EXPERT TESTIMONY MISS THE MARK AND ARE WITHOUT MERIT .................................................................. 3

  2.   DEFENDANT IS NOT ENTITLED TO ANY ADVERSE INFERENCE BASED ON PLAINTIFF'S INVOCATION OF THE FIFTH AMENDEMENT IN RESPONSE TO A FEW IMPROPER QUESTIONS REQUIRING INADMISSIBLE TESTIMONY AND EVIDENCE – SUCH INFERENCE WOULD ALSO BE UNDULY PREJUDICIAL AND CONFUSING .... 10

    A.   DEFENDANT HAD MORE THAN ADEQUATE OPPORTUNITY TO CONDUCT DISCOVERY AS TO ALL ISSUES ...................................................................... 10

    B.   DEFENDANT HAS FAILED TO PUT FORTH SUFFICIENT CORRABORATING EVIDENCE ........................................................................................................ 11

    C.   THE ADVERSE INFERENCES SOUGHT BY DEFENDANT ARE INADMISSIBLE UNDER THE FEDERAL RULES OF EVIDENCE .............................................. 12

      (i)   Defendant Cannot Establish Relevance and Substantial Need ..................................... 12

      (ii)   The Adverse Inferences Sought by Defendant Constitute Inadmissible Hearsay Under FRE 802 ..................................................................................................... 13

      (iii)   The Adverse Inferences Sought Are Inadmissible Under FRE 608(b) .................... 14

      (iv)   The Adverse Inferences Sought Are Inadmissible Under FRE 403 ......................... 15

      (v) Adverse Inferences Cannot be Drawn from Questions Not Actually Asked ................. 16

  3.   DEFENDANT HAS FAILED TO MEET THE STANDARDS FOR PLEADING THE MITIGATION OF DAMAGES AND AFTER-ACQURIED EVIDENCE AFFIRMATIVE DEFENSES FOR THE FIRST TIME AFTER MORE THAN TWO YEARS OF LITIGATION AND ON THE EVE OF TRIAL ................................................................................. 17

A.   DEFENDANT HAS WAIVED THE MITIGATION AFFIRMATIVE DEFENSE ........ 18

(i) No Good Cause Has Been, Or Can Be, Shown Under Rule 16(b) .................................. 17

(ii). Leave To Amend The Pleadings Under Rule 15 Will Cause Undue Prejudice And Delay. .................................................................................................................................... 18

B.   DEFENDANT HAS WAIVED THE AFTER-ACQUIRED EVIDENCE AFFIRMATIVE DEFENSE. ................................................................................................................................... 21

4.   IT IS SETTLED THAT PLAINTIFF CAN CLAIM LOST OVERTIME WAGES – USING THE BURDEN-SHIFTING STANDARD SET FORTH BY THE U.S. SUPREME COURT – IT IS FOR THE JURY TO DECIDE THE ISSUE OF DAMGES BASED ON THIS COURT'S INSTRUCTIONS. ........................................................................................................................ 22

III.  CONCLUSION .................................................................................................................... 24

# TABLE OF AUTHORITIES

## CASES

*Anderson v. Mt. Clemens Pottery Co.*
    328 U.S. 680, 687-88 (1946) ............................................................................................... 23

*Bank of Am., N.A. v. Fischer*
    927 F. Supp. 2d 15, 26 (E.D.N.Y. 2013) ............................................................................ 10

*Baxter v. Palmigiano*
    425 U.S. 308, 318 (1976) ..................................................................................................... 10

*U.S. v. 4003–4005 5th Ave., Brooklyn, NY*
    55 F.3d 78, 82–83 (2d Cir.1995); ........................................................................................ 10

*Brink's Inc. v. City of N.Y.*
    717 F.2d 700, 710 (2d Cir. 1983) ................................................................................... 12, 15

*Cablevision Systems Corp. v. De Palma*
    1989 WL 8165 at *5 (E.D.N.Y., Jan. 17, 1989) ................................................................. 10

*Conjugal P'ship Comprised by Jones v. Conjugal P'ship Comprised of Pineda*
    22 F.3d 391, 401 (1st Cir. 1994) .......................................................................................... 20

*Covington v. Kid*
    No. 94 Civ. 4234(WHP), 1999 WL 9835, at *3 (S.D.N.Y. Jan.7, 1999). ........................... 17

*Doe ex rel. Rudy-Glanzer v. Glanzer*
    232 F.3d 1258, 1264 (9th Cir.2000) .................................................................................... 11

*Edwards v. Dialysis Clinic, Inc.*
    423 F.Supp.2d 789, 795–796 (S.D.Ohio 2006) ..................................................................... 5

*Fiacco v. City of Rensselaer, N.Y.,*
    783 F.2d 319, 327 (2d Cir. 1986) ........................................................................................ 14

*Foman v. Davis*
    371 U.S. 178, 182 (1962). .................................................................................................... 19

*Jiao v. Chen,*
    No. 03 Civ. 0165(DF), 2007 WL 4944767, at *3 (S.D.N.Y. Mar. 30, 2007)...................... 24

*Kuebel v. Black & Decker Inc.*
    643 F.3d 352, 363 (2d Cir. 2011) ........................................................................................ 23

*Magana v Northern Mariana Islands*

107 F.3d 1436, 1446 (1997) ................................................................ 17

*McCarthy v. Dun & Bradstreet Corp.*
482 F.3d 184, 200 (2d Cir.2007 ........................................................... 18

*Mora v. Chem Tronics, Inc.*
16 F.Supp.2d 1192, 1228–29 (S.D.Cal.1998) ......................................... 5

*Moustakis v. City of New York*
No. 95-cv-2192 (LAK), 1996 WL 517689 at *1 (S.D.N.Y., Sept. 11, 1996) ........... 13

*Nimely v. City of New York*
414 F.3d 381, 397-98 (2d Cir, 2005) ..................................................... 9

*OS Recovery, Inc. v. One Groupe Intern., Inc.*
No. 02-cv-8993(LAK), 2005 WL 850830 at *1 (S.D.N.Y., Apr. 12, 2005); ........... 11

*Padilla v. Manlapaz*
643 F.Supp.2d 302, 309 (E.D.N.Y., 2009) ............................................. 23

*Pagan-Colon v. Walgreens of San Patricio, Inc.*
697 F.3d 1, 12 (1st Cir, 2012)............................................................. 22

*Parker v. Columbia Pictures Industries*
204 F.3d 326, 339 (2d Cir, 2000) ....................................................... 17

*Penfield v. Venuti*
589 F.Supp. 250, 257 (D.Conn, May 24, 1984) ...................................... 15

*Pope v. City of New York*
No. 10-cv-4118 (BSJ)(MHD), 2012 WL 39349 at *1 (S.D.N.Y., Jan. 5, 2012); ......... 13

*Reich v. Southern New England Telecommunications Corp.*
121 F.3d 58, 66 -67 (2d Cir. 1997). ..................................................... 23
*Renfro v. City of Emporia, Kan.*
948 F.2d 1529, 1539 (1991), *cert. denied*, 503 US 915 (1992) .................... 17

*Ridgeway v. Royal Bank of Scotland Grp.*
No. 3:11-CV-976 VLB, 2013 WL 1985016, at 18 (D. Conn. May 13, 2013) ........... 5

*Rose v. AmSouth Bank*
391 F.3d 63, 65 (2d Cir. 2004) ........................................................... 20

*Saks v. Franklin Covey Co.*
316 F.3d 337, 350 (2d Cir. 2003). ....................................................... 20

*Schober v. SMC Pneumatics, Inc.*

iv

No. IP 99–1285–CT/G, 2000 WL 1911684, at *5 (S.D.Ind. Dec.4, 2000) ................................................. 5

*SEC v. Suman*
   684 F.Supp.2d 378, 386 (S.D.N.Y. 2010) ................................................................................... 11

*Sokolski v. Trans Union Corp.*
   178 F.R.D. 393, 396 (E.D.N.Y.1998) ......................................................................................... 18

*Spevack v. Klein*
   385 U.S. 511, 514–515 (1967) ..................................................................................................... 9

*Tho Dinh Tran v. Alphonse Hotel Corp.*
   281 F.3d 23, 31 (2d Cir. 2002) ................................................................................................... 23

*Travellers Int'l, A.G. v. Trans World Airlines, Inc.*
   41 F.3d 1570, 1580 (2d Cir.1994) ............................................................................................. 17

*Trustees of Laborers Union Local No. 1298 of Nassau and Suffolk Counties Ben. Funds v. A to E, Inc.,*
   No. 13–cv–4800 (ADS)(ARL), 2014 WL 6926276 at *1 (E.D.N.Y., Dec. 9, 2014) ................ 19

*U.S. ex rel. DRC, Inc. v. Custer Battles, LLC.*
   415 F.Supp.2d 628, 632-35 (E.D.Va., Feb. 12, 2006) ............................................................. 12

*U.S. v. American Exp. Co.*
   No. 10–CV–4496 (NGG)(RER), 2014 WL 2879811 at *17 (S.D.N.Y., June 24, 2014) ............ 9

*U.S. v. Figueroa*
   618 F.2d 934, 943 (2d Cir.1980) ............................................................................................... 15

*U.S. v. Robinson*
   560 F.2d 507, 514-16 (2d Cir. 1977); ....................................................................................... 15

*Zubulake v. UBS Warburg LLC*
   231 F.R.D. 159, 163 (S.D.N.Y. 2005) ....................................................................................... 21

## Statutes

29 U.S.C. § 2617. ........................................................................................................................... 22

N.Y. Corrections Law § 752 ............................................................................................................ 22

## Rules

Fed.R.Civ.P. 15 ................................................................................................................................ 18

Fed.R.Civ.P. 16 ................................................................................................................................ 18

Federal Rules of Evidence ("FRE") 101 ............................................................................ 12

FRE 403 ............................................................................................................................. 15

FRE 602 ......................................................................................................................... 9, 12

FRE 702 ............................................................................................................................... 9

FRE 608(b) ......................................................................................................................... 14

FRE 609(a) ......................................................................................................................... 14

FRE 801(d)(2)(A) ............................................................................................................... 14

FRE 802 ............................................................................................................................. 13

FRE 803(8)(A) ................................................................................................................... 14

# I.     PRELIMINARY STATEMENT

Plaintiff Cassandra Woods ("Plaintiff" or "Woods"), respectfully submits the instant memorandum of law in opposition to the motion in limine of Defendant START Treatment and Recovery Center ("Defendant" or "START"). Defendant's motion should be denied in its entirety.

First, Defendant argues that Plaintiff's cannot show that her anemia in March 2012 caused her diminished work capacity, because such causation requires expert testimony and that Plaintiff and her treating physicians should be precluded from offering testimony in this regard. On or about March 22, 2012, Defendant told Plaintiff she could not take FMLA leave because she was on probation – a classic example of FMLA interference because of erroneous information. As a result, Plaintiff declined immediate hospitalization the next day which her doctor recommended because of her serious health (anemia) condition. The question of whether Plaintiff declined hospitalization because of Defendant's interference is not a medical one – it is a fact question that Plaintiff is best positioned to answer – not any of the doctors. Importantly, as reflected by the witness list in the pre-trial order, Plaintiff will be calling Defendant's medical expert, Dr. Barry Boyd, in her case-in-chief. Dr. Boyd in his expert report does confirm that Plaintiff's anemia likely caused her diminished work capacity and that the anemia and its consequences could have been remedied by treatment – such as the hospitalization Plaintiff declined on March 22, 2012 because of Defendant's interference.

Moreover, it is important to remember that causation is an issue for the jury to decide and expert testimony will only be allowed if it will help the jury make that decision – juries frequently decide causation without the help of expert testimony. Notably, medical testimony is not the same as expert testimony. Dr. Boyd has set forth in his report, the nature and effects of the anemia Plaintiff suffered from, and Plaintiff's treating physicians can do the same in the context of the treatment they provided to her. Plaintiff is obviously competent to testify about her own

symptoms, the way she felt mentally and physically, and how her condition affected her work. Therefore, there is an abundance of expert medical evidence, non-expert medical evidence, and fact testimony from Plaintiff for a jury to decide the causation issue in Plaintiff's favor.

Second, Defendant argues that the jury should be allowed to make adverse inferences from Plaintiff's invocation of her Fifth Amendment privilege during her deposition to less than twelve questions. At the outset, adverse inferences in Fifth Amendment situations are not automatic, and in any event, must also be admissible under the Federal Rules of Evidence. In this regard, most of the twelve subject questions involve statements and accusations by third parties and constitute classic inadmissible hearsay. A few others do not involve the Fifth Amendment and no adverse inference can be drawn as a result. Moreover, there cannot be an adverse inference to questions not actually asked, or questions about matters as to which Plaintiff lack personal knowledge or which are secret as a matter of law. The remaining question asked whether Plaintiff was convicted for something immoral or unethical – not dishonesty or whether a felony was involved, and any resulting inference would be inadmissible as a result. In terms of relevance, because the inferences are inadmissible, as a matter of law, they cannot be relevant. Nonetheless, none of the adverse inferences are relevant to the FMLA claims and issues. In terms of the general issue of credibility, contrary to Defendant's argument, Plaintiff does not rely solely on her own testimony – most of the witnesses on Plaintiff's witness list are medical doctors and Defendant's own employees/witnesses. Many of the issues are also undisputed and documentary evidence is a large part of the case. In any event, the adverse inferences even if otherwise proper (which they are not) cannot be allowed because Defendant has failed to put forth corroborating evidence and has failed to meet the substantial need standard. Even if Defendant is able to overcome these many legal hurdles, the adverse inferences would be inadmissible under FRE 403 because any relevance and probative value would be slight and substantially outweighed by the immense undue prejudice of

2

portraying Plaintiff as a criminal based on inadmissible accusations and innuendos that have no relevance to her claims in this action.

Third, Defendant's attempt to plead the mitigation of damages, and the after-acquired evidence affirmative defenses on the eve of trial must fail. At the outset, Defendant has failed to establish good cause for its lengthy delay of almost two years. In addition, Plaintiff will suffer tremendous undue prejudice, as well as additional delays and expense if these affirmative defenses are allowed at this late stage – Plaintiff did not and could not conduct discovery and develop a response to these defenses because they were never pleaded and discovery has long closed. Moreover, Defendant has failed to include a draft pleading with the subject affirmative defenses and the full range of supporting evidence and arguments given the late stage – further hampering the ability of Plaintiff and this Court to properly evaluate the potential for undue prejudice and to determine if the defenses would be futile.

Fourth, Defendant argues that Plaintiff should be precluded from, in essence, claiming overtime wages as part of lost wages. Defendant does not dispute that Plaintiff has a right to claim overtime wages lost as a result of her termination. Instead, Defendant claims such a claim will be speculative. To the contrary, the overtime claims settled after extensive discovery confirmed that Defendant had indeed violated the overtime laws. Moreover, Plaintiff will follow the burden-shifting standard set forth by the U.S. Supreme Court for proving overtime claims – that standard is the law even if Defendant views it as speculation or guesswork. Defendant's attempt to conduct a trial within its motion on the overtime claims must fail – it is the role of the jury to assess damages based on the instructions provided by this Court.

## II.     ARGUMENT

### 1.  DEFENDANT'S ARGUMENTS ABOUT CAUSATION AND EXPERT TESTIMONY MISS THE MARK AND ARE WITHOUT MERIT

Defendant argues that, "Because Plaintiff has no competent expert testimony to support her theory of medical causation (that Defendant caused her allegedly diminished capacity to work and poor performance), Plaintiff should be precluded from arguing her unsupported medical causation theory to the jury." (Def. Memo., pg. 7). The first step is to examine the relevant claim or issue and the subject evidence. In this regard, Defendant's expert, Dr. Barry Boyd, who is also on Plaintiff's witness list, stated in relevant part as follows (Ex. 1, pg. 2 – a true copy is attached hereto):

> As I understand it, Ms. Woods is claiming START interfered with her right to take FMLA leave in February 2011 and again in March 2012 and that, as a result of these alleged denials, she was unable to obtain treatment for her medical condition. She claims further that this alleged inability to obtain treatment (supposedly caused by START) caused her health to deteriorate which, in turn, caused her job performance to suffer markedly. Thus, she claims that START's termination for poor job performance in May of 2012 was wrongful because, according to her, her job performance suffered only because of START's alleged denials of FMLA leave.

Even though Dr. Boyd was not fully accurate in summarizing this category of Plaintiff's interference claims, he was sufficiently correct for purposes of the instant preclusion analysis. At the outset, as previously noted, Plaintiff will not be arguing at trial, that Defendant's interference with her FMLA rights in February 2011 caused her termination in May 2012. This is mainly because of the opinion of Dr. Boyd that in essence, the hospitalization and treatment received by Plaintiff in August 2011 remedied the consequences of her anemia and rendered moot or irrelevant, the causes for the conditions she was treated for in August 2011. We now turn to the FMLA interference in March 2012.

On March 21, 2012, less than three weeks into her probation, Plaintiff was told by Ms. Renee Sumpter that she could not take FMLA leave because she was on probation – Ms. Sumpter was a high-ranking manager of Defendant overseeing Plaintiff's probation. Defendant makes much about Plaintiff being off by a day in her recollection of the exact date of her conversation

4

with Ms. Sumpter. However, the records produced by Defendant compellingly support Plaintiff because they confirm the circumstances of the conversation – they confirm that Plaintiff spoke with Ms. Sumpter because Ms. Miller was out that day.

Nonetheless, the parties do not seem to disagree that the statement by Ms. Sumpter is erroneous and would constitute inference with FMLA rights to leave in the context of this case. *Ridgeway v. Royal Bank of Scotland Grp.*, No. 3:11-CV-976 VLB, 2013 WL 1985016, at 18 (D. Conn. May 13, 2013) ("this Court explained in its decision on the motion to dismiss that misleading or incorrect information regarding an employee's entitlement to FMLA leave can also interfere with an employee's attempt to exercise his or her rights under the FMLA if the employee was prejudiced by the misleading or incorrect information."); *see also Edwards v. Dialysis Clinic, Inc.,* 423 F.Supp.2d 789, 795–796 (S.D.Ohio 2006) ("An employer can be held liable for interference with FMLA entitlements if it incorrectly advises an employee regarding her leave rights" and if the error prejudiced the employee.); *Schober v. SMC Pneumatics, Inc.,* No. IP 99–1285–CT/G, 2000 WL 1911684, at *5 (S.D.Ind. Dec.4, 2000) ("misleading or giving incorrect information to an employee by an employer about the employee's FMLA rights or obligations constitutes interference if the incorrect information causes the employee to forfeit FMLA protection"); *Mora v. Chem Tronics, Inc.,* 16 F.Supp.2d 1192, 1228–29 (S.D.Cal.1998) ("This Court holds that a Plaintiff can be discouraged from taking absences whether or not s/he knows that such absences could be covered by the FMLA as opposed to other arrangements an employer might make. The bottom line is a Plaintiff is discouraged from doing something that he or she would like to do, but does not do because of a lack of or misinformation.").

The next day, on March 22, 2012, Plaintiff visited Dr. Yuri Birbrayer who found that Plaintiff was so sick, she should be hospitalized immediately. However, because of Ms. Sumpter's erroneous statement about FMLA leave and probation, Plaintiff declined hospitalization against

medical advice which she signed at the request of Dr. Birbrayer. (Pohl Decl. Ex. G). Less than a month later, Plaintiff collapsed on April 21, 2012, and was hospitalized for about a week, during which she received the treatment for her anemia that she should have received from March 22, 2012, when her doctor recommended hospitalization. In fact, Plaintiff's fear, based on Ms. Sumpter's statement, that she would be terminated by Defendant if absent from work for hospitalization, was confirmed when Defendant decided to terminate Plaintiff very soon after she was absent from work for hospitalization and treatment from April 21, 2012. In the interim, Plaintiff's job performance suffered as a result of her condition and lack of hospitalization/treatment – this period between the March 22, 2012 visit to Dr. Birbrayer and the April 21, 2012 hospitalization, was Plaintiff's worst in terms of her performance – and the closest to her termination.  Defendant claims that Plaintiff's performance problems during this period were a reason for Plaintiff's termination.

In the context set forth above, there are three parts of the causation chain: 1) whether Plaintiff declined hospitalization and did not get treatment because of Defendant's interference on March 21, 2012; 2) whether Plaintiff's work capacity likely diminished because of her medical condition from March 21, 2012 – the date of the interference; and 3) whether hospitalization and treatment would have remedied Plaintiff's medical condition and the diminished work capacity it caused. Before, we examine each part of the causation chain, a few clarifications are in order. First, it is settled law that causation is an issue for the jury to decide based on the preponderance of the evidence. Second, expert testimony is only allowed if it will assist the jury and the jury needs such assistance, provided the other requirements for admission of expert testimony are met.

We first address the third part of the causation chain – whether treatment would have remedied the effects of Plaintiff's anemia such as her diminished work capacity. There is no genuine dispute on this point because Defendant's own expert repeatedly argued throughout his

6

expert report that treatment would have remedied the effects of Plaintiff's anemia. (Ex.1). In fact, Dr. Boyd argues that Plaintiff's hospitalization and treatment in August 2011 cured the negative effects of Plaintiff's anemia up to that point. (Ex.1, pg. 16-17).

Next, we address the second part of the causation chain – whether Plaintiff's anemia, especially as of March 22, 2012, likely caused her diminished work capacity. There is no genuine dispute on this point because Defendant's own expert (who is on Plaintiff's witness list) confirms this in his expert report. (Ex.1, pg. 14-15). Moreover, in his report, Dr. Boyd described anemia in the context of Plaintiff's situation and stated as follows (Ex. 1, pg 3):

> Symptoms related to anemia may occur for two reasons. The first is due to decreased oxygen delivery to tissues because of low hemoglobin content. In this context, the total volume of blood delivered to the organs (as well as blood pressure) remain normal, but the lack of sufficient RBCs and hemoglobin in that blood result in insufficient oxygen delivery to the tissues in the body. The second cause of symptomatic anemia occurs in the setting of acute and marked bleeding, resulting in a marked decrease of not only RBCs but in the total blood volume (quantity of blood circulating). This results in an acute drop in blood pressure and blood flow to vital organs. Ms. Woods' anemia symptoms arose from both her chronic low hemoglobin and her periodic acute blood loss (which necessitated emergency admissions). Symptoms of impaired oxygen delivery due to anemia include shortness of breath with activity and at rest when anemia is more severe, syncope (fainting), degrees of fatigue, as well as signs and symptoms of an increase in heart rate resulting in palpitations and a roaring pulsatile sound in the ears. More severe anemia may lead to lethargy, confusion, and potentially life-threatening complications related to weakened heart function (congestive heart failure), chest pain due to impaired delivery of oxygen to the heart muscle (angina, arrhythmia), abnormal heart rhythms (arrhythmia), and/or myocardial infarction (prolonged decreased oxygen to the heart muscle resulting in damage to the heart or "heart attack"). Such life-threatening complications are more likely to occur in the elderly and those with the aforementioned pre-existing conditions.

Notably, the above basic but dramatic testimony about Plaintiff's anemia, its symptoms and effects, can also be given by Plaintiff's treating physicians when testifying as fact witnesses about the medical treatment they rendered to her for anemia and its consequences. In fact, in its deposition of Dr. Braithwaite, one of Plaintiff's treating physicians, Defendant asked these questions and many more.

Significantly, Plaintiff is obviously competent to testify as to the symptoms she was experiencing, the way she felt physically and mentally, and how her condition actually affected her ability to work – she is in the best position to provide this type of fact testimony. Plaintiff's competency in this regard has already been acknowledged by the Court. In a part of Judge Gold's quote from the November 18, 2014 conference, curiously missing from Defendant's brief, Judge Gold referred to Plaintiff's ability to articulate her personal observations regarding her symptoms as fact testimony:

> *So if the plaintiff is going to say, I didn't get to see the doctor, so I felt weaker, so I didn't get to do my work, that's one thing.* But if the doctor is going to get up and say -- let me rephrase that. No doctor is going to get up in an Eastern District courtroom, I don't think, and say, the reason the plaintiff was unable to muster the strength and energy to do her work was because of the neglect of her medical care over the last two years. That's an opinion that is not a fact-based testimonial about treatment.

Nov. 18, 2014 Tr., p. 15:18 – 16:6 (emphasis added). To the extent there was a mistaken belief that Plaintiff was attempting to use a treating physician fact witness to provide expert testimony about medical causation – this had never been Plaintiff's intent.

The role of a jury is to connect the dots and make reasonable inferences. There are several ways in which a jury can decide the causation issue in Plaintiff's favor with the type of testimony set forth above. First, a jury can easily conclude that because Plaintiff's anemia, as of March 22, 2012, was severe enough that it required her to be hospitalized, she should obviously have been in the hospital and not at work, and was therefore unable to perform her job as a result, until she collapsed and was hospitalized and treated from April 21, 2012 to April 27, 2012. In fact, Dr. Braithwaite also testified that Plaintiff was too sick to work – not based on any expert opinion but based on logic and common sense. (Braithwaite Tr. 103-104). Second, a jury can easily conclude that Plaintiff's anemia caused her diminished work performance based on Dr. Boyd's testimony to

8

this effect, Dr. Braithwaite's medical testimony about anemia and his treatment of Plaintiff's anemia, Dr. Birbrayer's testimony about his treatment of Plaintiff, and Plaintiff's testimony about her anemia symptoms and the effects on her work performance. This is not a complicated causation case – this is not a case where experts are needed to answer a complex and difficult medical question such as whether Agent Orange causes cancer and birth defects.

The remaining question then, and the first part of the causation chain, is whether Defendant's interference with Plaintiff's FMLA rights on March 21, 2012, resulted in Plaintiff not being hospitalized and treated. This is not a medical question – it is a fact question that Plaintiff is in the best position to answer. Of course, Defendant can challenge Plaintiff on this point, and a jury can choose to believe or not to believe her – but the point remains, that the question is one of fact that does not require expert testimony. Obviously, Dr. Boyd and the other medical doctors have no expertise in Ms. Woods' decision-making process and Dr. Boyd has never even met Ms. Woods. An expert witness cannot testify about facts to which they have "no personal knowledge and do not apply any particular expertise in forming an opinion." FRE 602; FRE 702; *Nimely v. City of New York*, 414 F.3d 381, 397-98 (2d Cir, 2005) (vacating and remanding judgment after trial because expert witness in effect opined on the credibility of fact witnesses); *U.S. v. American Exp. Co*., No. 10–CV–4496 (NGG)(RER), 2014 WL 2879811 at *17 (S.D.N.Y., June 24, 2014) (expert witness's testimony not permitted "where it concerns [expert's] opinions on [third-parties'] attitudes, motivations, or likely behavior… In such instances, the more appropriate witnesses are likely the [third-parties] themselves.").

Accordingly, Defendant's arguments about causation and medical expert testimony are without merit. Even though expert testimony is not needed, Plaintiff will be presenting expert testimony through Dr. Barry Boyd.

## 2.  DEFENDANT IS NOT ENTITLED TO ANY ADVERSE INFERENCE BASED ON PLAINTIFF'S INVOCATION OF THE FIFTH AMENDMENT IN RESPONSE TO A FEW IMPROPER QUESTIONS REQUIRING INADMISSIBLE TESTIMONY AND EVIDENCE – SUCH INFERENCES WOULD ALSO BE UNDULY PREJUDICIAL AND CONFUSING

The Fifth Amendment secures a right "to remain silent unless [a witness] chooses to speak in the unfettered exercise of his own will, and to suffer no penalty ... for such silence." *Spevack v. Klein*, 385 U.S. 511, 514–515 (1967). Defendant asserts that Plaintiff's invocations of the Plaintiff's treasured Fifth Amendment during her depositions warrant the imposition of adverse inferences. (Def. Memo., pg. 13). While the invocation of one's Fifth Amendment right can require the imposition of adverse inferences in certain circumstances; *Baxter v. Palmigiano*, 425 U.S. 308, 318 (1976); *U.S. v. 4003–4005 5th Ave., Brooklyn, NY*, 55 F.3d 78, 82–83 (2d Cir.1995); it is not warranted here. Contrary to Defendant's position, the invocation of Fifth Amendment privilege does not *require* that adverse inferences be drawn; rather, in *Baxter*, the U.S. Supreme Court held that the evidentiary policies undergirding the Fifth Amendment privilege are not as strong in the civil context as it is in the criminal context. *Baxter*, 425 U.S. at 318 ("Fifth Amendment *does not forbid* adverse inferences against parties to civil actions") (emphasis added). Instead, as "all parties—those who invoke the Fifth Amendment and those who oppose them— should be afforded every reasonable opportunity to litigate a civil case fully and because exercise of Fifth Amendment rights should not be made unnecessarily costly, see [*Spevack*, 385 U.S. at 515], courts … should seek out those ways that further the goal of permitting as much testimony as possible to be presented in the civil litigation, despite the assertion of the privilege." *4003–4005 5th Ave.*, 55 F.3d at 83-84.

### A.  DEFENDANT HAD MORE THAN ADEQUATE OPPORTUNITY TO CONDUCT DISCOVERY AS TO ALL ISSUES

Generally, adverse inferences to the invocation of the Fifth Amendment are permissible where parties, who in addition to their invocations, have otherwise frustrated the discovery process to "gain an unfair strategic advantage over opposing parties." *Id.*; *see also Cablevision Systems Corp. v. De Palma*, 1989 WL 8165 at *5 (E.D.N.Y., Jan. 17, 1989) (adverse inference appropriate when invocator refused to answer questions at deposition, failed to produce relevant documents, and failed to make himself available to testify at trial); *Bank of Am., N.A. v. Fischer*, 927 F. Supp. 2d 15, 26 (E.D.N.Y. 2013) (adverse inference appropriate when deponent asserted Fifth Amendment right to every question but their name); *SEC v. Suman*, 684 F.Supp.2d 378, 386 (S.D.N.Y. 2010) (adverse inference appropriate where no criminal charges were present, and defendants failed to produce some, and destroyed other, discoverable material). Here, Plaintiff has been otherwise very cooperative regarding discovery, participated in two separate depositions, and reserved the assertion of the Fifth Amendment privilege solely to the relatively few and improper questions identified by Defendant. Defendant was able to obtain full and complete discovery on the claims and defenses asserted herein because the subject matter of the Fifth Amendment invocation is very different from the FMLA issues before this Court.

### B. DEFENDANT HAS FAILED TO PUT FORTH SUFFICIENT CORROBORATING EVIDENCE

Moreover, the Constitutional issues notwithstanding, there are additional reasons why adverse inferences in this instance would be improper. First, "an adverse inference from invocation of the [Fifth Amendment] privilege may be appropriate only where there is independent evidence corroborating the proposition sought to be inferred." *OS Recovery, Inc. v. One Groupe Intern., Inc.,* No. 02-cv-8993(LAK), 2005 WL 850830 at *1 (S.D.N.Y., Apr. 12, 2005); *see Doe ex rel. Rudy-Glanzer v. Glanzer*, 232 F.3d 1258, 1264 (9th Cir.2000) ("the key to the *Baxter* holding is that such adverse inference can only be drawn when independent evidence

11

exists of the fact to which the party refuses to answer."). Here, Defendant identifies twelve (12) invocations of the Fifth Amendment which should be subject to adverse inferences; specifically, Defendant wishes the Court to permit the jury to assume, solely on the basis of Plaintiff's invocation of her Fifth Amendment privilege, that Plaintiff would have answered "yes" to all twelve of the questions identified by Defendant. (Def. Memo., pg. 14, n. 9). Out of the twelve questions identified, eleven (11) pertained to the substance of accusations made by third-parties (hereinafter, the "accusatory questions"). (Def. Memo., pg. 13-14) (see Inv. Nos. 1, 2, 4-12). Defendant compellingly fails to satisfy the requirement of putting forth sufficient corroborating evidence.

## C.  THE ADVERSE INFERENCES SOUGHT BY DEFENDANT ARE INADMISSIBLE UNDER THE FEDERAL RULES OF EVIDENCE

However, even if Defendant had produced the required corroborating evidence with its motion papers, the adverse inferences sought, as with all trial evidence, would still be subject to the Federal Rules of Evidence, and will be deemed inadmissible as a result. See *Brink's, Inc. v. City of New York*, 717 F.2d 700, 710 (2d Cir.1983); *Glanzer*, 232 F.3d at 1266 ("Like all evidence presented to the jury, the inquiry for the admissibility of the negative inference from Elroy's silence begins with the relevance threshold."); FRE 101; *see also U.S. ex rel. DRC, Inc. v. Custer Battles, LLC*., 415 F.Supp.2d 628, 632-35 (E.D.Va., Feb. 12, 2006) ("any adverse inferences must be relevant, reliable, and not unfairly prejudicial, confusing, or cumulative") (citing FRE 402, 602, 403).

### (i)      Defendant Cannot Establish Relevance and Substantial Need

Here, according to Defendant, the adverse inferences it seeks are relevant as to the issues of credibility and as to the affirmative defense based on after-acquired evidence. (Def. Memo., pg. 15-19). However, Defendant has never pleaded the after-acquired evidence affirmative defense,

and this motion on the eve of trial is the first time that Defendant has asserted this affirmative defense – the affirmative defense is therefore waived and cannot be the basis for Defendant's relevance argument. Also, because, as explained below, the adverse inferences are inadmissible, they cannot by law qualify as relevant under the FRE. Moreover, the subject adverse inferences are not relevant to any of the FMLA claims or issues and the general issue of credibility is not sufficient to establish relevance and substantial need. *Glanzer,* 232 F.3d at 1265 ("no negative inference can be drawn against a civil litigant's assertion of his privilege against self-incrimination unless there is a substantial need for the information and there is not another less burdensome way of obtaining that information. *See, e.g., Serafino*, 82 F.3d at 518–19."). In similar contexts, where courts have imposed a standard higher than relevance, such as a compelling or substantial need standard, they have concluded that the general issue of credibility is not a substantial or compelling need. See *Pope v. City of New York*, No. 10-cv-4118 (BSJ)(MHD), 2012 WL 39349 at *1 (S.D.N.Y., Jan. 5, 2012); *Moustakis v. City of New York*, No. 95-cv-2192 (LAK), 1996 WL 517689 at *1 (S.D.N.Y., Sept. 11, 1996).

> **(ii)     The Adverse Inferences Sought by Defendant Constitute Inadmissible Hearsay Under FRE 802**

Even if the relevance and substantial need standards were satisfied, the adverse inferences requested by Defendant based on these accusatory questions are unreliable hearsay, inadmissible under FRE 802. FRE 802 prohibits the admission of any hearsay statements, which are defined as any statement "(1) the declarant does not make while testifying at the current trial or hearing; and (2) a party offers in evidence to prove the truth of the matter asserted in the statement." FRE 801(c). Here, the accusatory questions required Plaintiff to testify and relay purported allegations by a third party (Def. Memo., pg. 13-14), made outside of a trial or hearing and seeks to take the substance of these allegations as true and use them against Plaintiff – classic inadmissible hearsay

13

unless they fall under an exemption to the hearsay prohibition. As no exemption to the hearsay prohibition would apply[1], the adverse inferences drawn on the accusatory questions are inadmissible and must be excluded.

### (iii)   The Adverse Inferences Sought Are Inadmissible Under FRE 608(b)

Defendant also requests an adverse inference because Plaintiff invoked the Fifth Amendment when asked "were you convicted of any immoral or unethical conduct?" The inference would therefore be that Plaintiff was convicted of immoral or unethical conduct. However, such an inference is not admissible on the issue of credibility as Defendant argues, because FRE 609(a) permits the admission of evidence concerning a criminal conviction only when the crime is either a felony or if the Court "can readily determine that establishing the elements of the crime" required proving a falsehood – neither of these elements can be ascertained or established from the adverse inference - "immoral" and "unethical" is not necessarily the same as "dishonest." Thus, any adverse inference of this conviction could not be admissible under FRE 609[2].

---

[1] Defendant mentions two exemptions in footnote: (1) that Plaintiff's invocations are admissible as a party admission under FRE 801(d)(2)(A); and (2), the accusations made by the government constitute "public records" and are admissible as an exception to the general hearsay rule under FRE 803(8). However, it is the subject matter of the invocations (i.e. the accusations of dishonest conduct), and not the invocations themselves, which constituted hearsay; and therefore the party admission rule does not apply. FRE 803(8)(A) requires that statements of a public office meet certain criteria in order to qualify as "public records" so as to exempt them from the hearsay rule. See FRE 803(8)(A). Defendant fails to even clarify what is meant by the term accusation, let alone demonstrate that the accusations meet the criteria of FRE 803.

[2] Further, Defendant argues in footnote that substance of the acts underlying the conviction are admissible under FRE 608(b). However, as a conviction – or accusations for that matter – would constitute consequences for Plaintiff's supposed conduct, evidence of such consequences would be considered extrinsic evidence and barred. *See* FRE 608(b) Advisory Committee Notes (2003) ("It should be noted that the extrinsic evidence prohibition of Rule 608(b) bars any reference to the consequences that a witness might have suffered as a result of an alleged bad act. For example, Rule 608(b) prohibits counsel from mentioning that a witness was suspended or disciplined for the conduct that is the subject of impeachment, when that conduct is offered only to prove the character of the witness."); *see also U.S. v. Davis*, 183 F.3d 231, 257 n.12 (3d Cir, 1999) .

### (iv)      The Adverse Inferences Sought Are Inadmissible Under FRE 403

Significantly, even assuming *arguendo* that any of the adverse inferences stemming from

Plaintiff's invocation of her Fifth Amendment privilege would be otherwise admissible, FRE 403

would require that they be nonetheless excluded. Courts are generally given wide latitude to

exclude otherwise admissible evidence when "its probative value is substantially outweighed by

the danger of… unfair prejudice, confusing the issues, [or] misleading the jury[, among other

things]." FRE 403; *Fiacco v. City of Rensselaer*, N.Y., 783 F.2d 319, 327 (2d Cir. 1986). Evidence

is unfairly prejudicial "when it tends to have some adverse effect upon a defendant beyond tending

to prove the fact or issue that justified its admission into evidence." *U.S. v. Figueroa*, 618 F.2d

934, 943 (2d Cir.1980). To determine whether or not, the Court must engage in a balancing test;

weighing the risk of unfair prejudice or confusion against the probative value of the evidence. *See

U.S. v. Robinson*, 560 F.2d 507, 514-16 (2d Cir. 1977); *Brink's Inc. v. City of N.Y.*, 717 F.2d 700,

710 (2d Cir. 1983). In Fifth Amendment invocation context, "there is a danger that jurors will

regard any party invoking the privilege as a criminal who has probably eluded justice [...which]

may constitute unfair prejudice." *Penfield v. Venuti*, 589 F.Supp. 250, 257 (D.Conn, May 24,

1984)(internal quotations omitted);  *see also Brink's Inc. v. City of N.Y.,* 539 F.Supp. 1139, 1141

(S.D.N.Y., May 25, 1982) *aff'd* 717 F.2d 700 (holding that invocations cause prejudice but such

prejudice is not unfair due to the significant probative value of the invocation in that case).

Here, as an initial matter the inferences are not relevant to any of the FMLA claims and

issues – Defendant claims they are relevant to the general issue of credibility. Contrary to

Defendant's assertions, Plaintiff's case involves more evidence than simply her testimony. In this

regard, Plaintiff's witness list consists of several witnesses other than Plaintiff – witnesses put

forth by Defendant itself. Also, many of the key facts such as the period of leave, the

hospitalization, Plaintiff's medical conditions, the work evaluations, termination memos, etc., are

all supported by documentary evidence and most issues emanating from them and not disputed.

The probative value is therefore slim and more than substantially outweighed by the undue

prejudice of the jury viewing Plaintiff as a fraudster investigated and convicted by the government

based on inadmissible evidence of inferences the truth of which have not been established. The

jury will also be confused to how can someone be labelled a criminal based on just allegations,

and how can accusations that have nothing to do with the claims, be relevant. Litigating these

types of adverse inference issues, especially involving the Fifth Amendment privilege tend to

become a trial within a trial – causing unnecessary delay and distracting from the issues.

### (v) Adverse Inferences Cannot be Drawn from Questions Not Actually Asked

Probably realizing that all of its questions as to which it seeks an adverse inference are

improper or call for inadmissible testimony, Defendant seems to argue that it should be allowed to

seek adverse inferences as to questions it did not ask, and/or that there should be an adverse

inference as to Plaintiff's entire case, because Plaintiff stated that she would continue to invoke the

Fifth Amendment as to the grand jury topic. (Def. Memo., pg. 14-15). Defendant's argument is

contrary to settled law and must fail. In this regard, the Court of Appeals in *Rudy-Glanzer*, 232

F.3d at 1265-1266, stated in relevant part as follows:

> Because of the question-by-question nature of the privilege against self-incrimination, the only adverse inference that could have been obtained from Elroy's refusal to answer the above stated question is that he took the penile plethysmograph. Even though Elroy's counsel threatened to leave if such a line of questioning continued, see Deposition Transcript at 45, nothing legally prevented Rudy–Glanzer's counsel from asking Elroy other questions such as "did you ever take similar tests?" or "did you ever fail such tests?"1 Elroy would have been within his rights to assert his Fifth Amendment privilege against self-incrimination to each of these other questions. However, these other questions never came and no privilege from which an adverse inference could be inferred was ever asserted to these other questions

Here, as in Rudy-Glanzer, "nothing legally prevented [Defendant's] counsel from asking

[Plaintiff] other questions." Even more compelling here, Plaintiff Woods or her counsel never

threatened to walk out – even if such were the case, Defendant could have sought the help of the Magistrate as it did on many occasions. Similarly, Defendant cannot seek adverse inferences as to question which Plaintiff did not invoke the Fifth Amendment, or questions as to which she does not have personal knowledge such as grand jury proceedings which by law are secret. It is worth reiterating that Plaintiff answered every question in her two depositions relating to her claims in this action. In the event the Court does permit any of the adverse inference sought by Defendant, Plaintiff should be allowed to rebut those inferences, especially in the context of this case.

3. **DEFENDANT HAS FAILED TO MEET THE STANDARDS FOR PLEADING THE MITIGATION OF DAMAGES AND AFTER-ACQUIRED EVIDENCE AFFIRMATIVE DEFENSES FOR THE FIRST TIME AFTER MORE THAN TWO YEARS OF LITIGATION AND ON THE EVE OF TRIAL**

The request that Defendant be permitted to assert a defense that Plaintiff had a duty to mitigate damages, in effect operates instead as a motion for leave to amend Defendant's answer. *See* FRCP 15(a)(2). The amendment of pleadings, to include additional claims or defenses, is dictated by two procedural rules: "Rule 15(a), which provides for amendments to the pleadings, and Rule 16(b), which directs district court judges to set scheduling orders limiting the time to make such amendments." *Parker v. Columbia Pictures Industries*, 204 F.3d 326, 339 (2d Cir, 2000). "If good cause [under Rule 16(b)] is shown, then the moving party must demonstrate that the amendment is proper under Rule 15(a)." *Covington v. Kid*, No. 94 Civ. 4234(WHP), 1999 WL 9835, at *3 (S.D.N.Y. Jan.7, 1999).

The failure to plead or properly plead an affirmative defense results in waiver of the affirmative defense. FRCP 8(c); *See Travellers Int'l, A.G. v. Trans World Airlines, Inc*., 41 F.3d 1570, 1580 (2d Cir.1994) ("A failure to plead an affirmative defense results in a waiver" and finding that with respect to mitigation of damages defense that "TWA may fairly be said to have waived it as a defense"); *Magana v Northern Mariana Islands*, 107 F.3d 1436, 1446 (1997);

17

*Renfro v. City of Emporia, Kan*., 948 F.2d 1529, 1539 (1991), *cert. denied*, 503 US 915 (1992)

(upholding district court finding that exemption affirmative defense was waived).

### A.  DEFENDANT HAS WAIVED THE MITIGATION AFFIRMATIVE DEFENSE

### (i)     No Good Cause Has Been, Or Can Be, Shown Under Rule 16(b)

This case was initially filed and the complaint served on Defendant in 2013 – we are now

ready to go to trial in 2016. On October 13, 2015, Judge Gold ordered that discovery was

complete and certified the case as ready for trial. In fact, with limited exceptions, not applicable

here, discovery was closed in the Fall of 2014. Mainly because discovery and the case as a whole

are shaped by the pleadings, it is basic litigation procedure that all amendments to the pleadings

need to have been made well in advance of the fact discovery deadlines. Defendant had not one,

but two bites at the apple in asserting all appropriate affirmative defenses: Defendant's answer to

Plaintiff's First Amended Complaint (ECF Dkt. No. 12, filed 4/25/14); as well as Defendant's

answer to Plaintiff's Second Amended Complaint (ECF Dkt. No. 43, filed 2/2/15). Neither of

these answers included a failure to mitigate defense. Despite these opportunities to include all

applicable affirmative defenses, Defendant "inadvertently omitted" the failure to mitigate defense

until late 2015/early 2016. (Def. Memo., pg. 10, n. 6). An "inadvertent" omission of an affirmative

defense, over a period of two years, does not constitute good cause and this Court should refuse to

permit any leave to amend the pleadings.

### (ii)     Leave To Amend The Pleadings Under Rule 15 Will Cause Undue Prejudice And Delay

Even assuming that the FRCP 16(b) threshold was met in this case, Defendants would also

have to demonstrate that the Court should provide leave to amend its pleadings under FRCP 15.

According to FRCP 15, a party may amend its pleading once as a matter of course within 21 days

of serving it. FRCP 15(a)(1). However, after 21 days have elapsed, the party may amend its

pleading "only with the opposing party's written consent or the court's leave." FRCP 15(a)(2).

Leave to amend "shall be freely given when justice so requires," as amended pleadings "tend to

facilitate a proper decision on the merits." FRCP 15(a); *Sokolski v. Trans Union Corp.*, 178 F.R.D.

393, 396 (E.D.N.Y.1998). The decision to grant or deny leave to amend is within the "sound

discretion" of the district court. *McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 200 (2d

Cir.2007). "However, leave should not be granted where the amendment is unduly delayed or

brought in bad faith, or where it would prejudice the opposing party, or where it would be futile."

*Trustees of Laborers Union Local No. 1298 of Nassau and Suffolk Counties Ben. Funds v. A to E,*

*Inc.*, No. 13–cv–4800 (ADS)(ARL), 2014 WL 6926276 at *1 (E.D.N.Y., Dec. 9, 2014); citing

*Foman v. Davis*, 371 U.S. 178, 182 (1962).

      Over the course of two-years, Defendant failed to move to amend the pleadings, at any

point, to advance the mitigation of damages affirmative defense, about which it had known the

entire time and had otherwise had multiple opportunities to assert. Instead, Defendant waited until

after discovery had been finalized and right up until the very eve of trial to assert this defense –

characterizing away the defense's absence in the pleadings as an "inadvertent omission".

Considering that Plaintiff had not conducted the necessary discovery pertaining to the mitigation

defense because such a defense was not pleaded in the Answer, the factual and legal particulars of

how Defendant intends to argue this defense are still unknown - a precarious position leading into

trial. Further, Defendant fails to provide a proposed amended pleading with the failure to mitigate

defense; frustrating Plaintiff's, as well as this Court's, ability to examine the degree of prejudice

such an amendment would cause, ensure that the proposed amendment plausibly states a defense,

or ascertain whether the defense would be futile. *See Trustees of Laborers Union Local No. 1298*,

2014 WL 6926276 at *1. As such, this Court should not permit Defendant leave to amend its

pleading at this late hour.

Here, Defendant asserts that, despite omitting such a defense from its amended answer, Plaintiff was put on notice of its failure to mitigate defense on May 9, 2014 when Plaintiff was served with document requests seeking documents that relate to any employment following her termination with Defendants and Plaintiff subsequently produced the requested documents. (Def. Memo., pg. 9). Further, Defendant claims to have put Plaintiff on notice of the affirmative defense through the mentioning of such a duty during Plaintiff's deposition. (Def. Memo., pg. 10). As it relates to the production of evidence, Plaintiff did not impliedly consent to the affirmative defense, as such evidence pertained to broader issues; namely, the defining of appropriate damages irrespective of any duty Plaintiff had to mitigate. *See Conjugal P'ship Comprised by Jones v. Conjugal P'ship Comprised of Pineda,* 22 F.3d 391, 401 (1st Cir. 1994). But further, the Federal Rules *mandate* the pleading of affirmative defenses. FRCP 8(c) ("a party *must affirmatively state*"). The standard for notice is not whether evidence came out informally during discovery – Plaintiff should not be obligated to guess and speculate in order to figure out the defenses being asserted. *See Saks v. Franklin Covey Co.*, 316 F.3d 337, 350 (2d Cir. 2003).

Even where no notice was provided, a court may still permit an unpled affirmative defense so long as there no "prejudice to the plaintiff, bad faith or dilatory motive on the part of the defendant, futility, or undue delay of the proceedings." *Rose v. AmSouth Bank*, 391 F.3d 63, 65 (2d Cir. 2004); *Saks,* 316 F.3d at 350. "Where the defense is raised at the first pragmatically possible time and applying it at that time would not unfairly prejudice the opposing party" waiver may not be proper. *Rose*, 391 F.3d 65; *Rothenberg*, 136 F.3d at 910. Once again, as stated above, Defendant admits that it had intended to raise the failure to mitigate defense at the time of its initial pleading on 4/24/14, but had inadvertently omitted the defense. (Def. Memo., pg. 9-10). Thus, Defendant failed to raise the defense at the "first pragmatically possible time" and instead, attempts to do so now after discovery was completed and weeks before trial. Due to the timing,

20

Plaintiff was unable to ascertain Defendant's evidence regarding this defense and remains in the dark regarding how Defendant intends to argue the defense without any chance to prepare an adequate response. Considering Defendant admittedly already received the evidence pertaining to the failure to mitigate defense; (Def. Memo., pg. 9); and has failed to cite even one instance in its motion brief where Plaintiff allegedly failed to mitigate her damages by refusing employment, this affirmative defense would also likely be futile. Accordingly, this Court should deny leave for Defendant to plead the affirmative defense of failure to mitigate damages.

### B. DEFENDANT HAS WAIVED THE AFTER-ACQUIRED EVIDENCE AFFIRMATIVE DEFENSE

Defendant argues that if a jury finds it liable under the FMLA, Plaintiff's damages should be reduced based on what is known as an after-acquired affirmative defense. Specifically, Defendant asserts, without anything more, that it would have terminated Plaintiff in January 2013 when it received a grand jury subpoena asking for employment information about Plaintiff. It therefore argues that Plaintiff should not be awarded damages for the period after January 2013. (Def. Memo., pg. 16-17).      Further, Defendant argues that, "[e]vidence at trial will show that, if Defendant knew an employee with these record-keeping duties was involved in falsification of records, fabricating events, misrepresenting facts to the government and fraud, Defendant would have fired her." (Def. Memo., pg. 18). However, evidence cannot be used at trial unless it is first disclosed in discovery and Plaintiff is allowed to test such evidence and defenses including through paper discovery and deposition, and develop an appropriate response for trial – undue prejudice to Plaintiff will be immense. Moreover, the subpoena Defendant received in January 2013 (Pohl Decl., Ex. I), says nothing about fraud or dishonesty etc., and no such admissions were made by Plaintiff during her two depositions, or in this case – Plaintiff invoked the Fifth in response to questions which also called for hearsay accusations/testimony. This is also further

confirmation that Defendant's after-acquired evidence defense would be futile even if all the other requirements were met. Therefore, Defendant's de facto motion to amend to add this affirmative defense for the very first time on the eve of trial should be denied swiftly under the above analysis of the last minute attempt to assert the mitigation of damages defense, and for the reasons set forth in *Zubulake v. UBS Warburg LLC*, 231 F.R.D. 159, 163 (S.D.N.Y. 2005) ("Defendants' motion to assert an affirmative defense based on after-acquired evidence is hereby denied because of the unexplained twenty-two month delay in asserting the defense, the undue prejudice it would cause plaintiff in having to re-open discovery which may prove to be stale, and the resulting postponement of the trial date."). Also, because Defendant has not included a proposed amended pleading with this defense, we cannot conduct a proper plausibility and futility analysis. Nonetheless, it is unlikely that Defendant can set forth a plausible affirmative defense based on after-acquired evidence. In this regard, Defendant argues that it would have terminated Plaintiff upon receiving a grand jury subpoena requesting information about Plaintiff's employment and which said nothing about fraud, dishonesty and the like. It is simply implausible that Defendant would have terminated Plaintiff merely because a grand jury seeks employment information about that employee – especially where Defendant has not produced any policies or testimony to that effect. Very significantly, given Plaintiff's job a counselor – interviewing patients and taking notes, terminating her because of a conviction or perceived conviction or criminal investigation would violate N.Y. Corrections Law § 752.

### 4. IT IS SETTLED THAT PLAINTIFF CAN CLAIM LOST OVERTIME WAGES – USING THE BURDEN-SHIFTING STANDARD SET FORTH BY THE U.S. SUPREME COURT – IT IS FOR THE JURY TO DECIDE THE ISSUE OF DAMAGES BASED ON THIS COURT'S INSTRUCTIONS

The FMLA provides that employers are liable "for damages equal to (i) the amount of (I) any wages, salary, employment benefits, or other compensation denied or lost to such employee

by reason of the violation." 29 U.S.C. § 2617. This compensation may include overtime. *Pagan-Colon v. Walgreens of San Patricio, Inc.*, 697 F.3d 1, 12 (1st Cir, 2012). Defendant argues that if it is found liable on the FMLA claims, the jury should be precluded from including lost overtime wages earned by Plaintiff in any award for lost wages. (Def. Memo., pg. 21-24). Defendant does not seem to dispute that Plaintiff has a right to claim lost wages including overtime wages. Instead, Defendant seems to be arguing that such a claim for overtime wages would amount to speculation and guesswork. Prior to settlement, the overtime claims and Defendant's practices were examined at length in discovery after which there was little doubt that Defendant had violated the overtime laws. Defendant now makes a series of wild, self-serving and even misleading assertions and connections which were all debunked in discovery. However, the correct approach is not to engage in a trial within a motion. The correct approach is for Plaintiff to introduce her evidence following the burden-shifting standard applicable to proving the amount of overtime wages which are not completely or accurately reflected in the Defendant's records. See *Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680, 687-88 (1946). *Reich v. Southern New England Telecommunications Corp.*, 121 F.3d 58, 66 -67 (2d Cir. 1997). *Tho Dinh Tran v. Alphonse Hotel Corp.*, 281 F.3d 23, 31 (2d Cir. 2002). "An employee has carried out his burden if he proves that he has in fact performed work for which he was improperly compensated and if he produces sufficient evidence to show the amount and extent of that work as a matter of just and reasonable inference." *Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680, 687 (1946). Plaintiff need only meet a "minimal" prima facie burden – a burden that he can meet with "estimates" based on his own "recollection." *Kuebel v. Black & Decker Inc.*, 643 F.3d 352, 363 (2d Cir. 2011). Under the FLSA's burden-shifting framework, a defendant's evidentiary burden in rebutting an employee's testimony is very high. The Supreme Court in *Anderson* said that to challenge or rebut an employee's testimony an employer must "come forward with evidence of the precise amount of

23

work performed or with evidence to negative the reasonableness of the inference to be drawn from the employee's evidence." *Anderson*, 328 U.S. at 688. As the court concluded in *Padilla v. Manlapaz*, 643 F.Supp.2d 302, 309 (E.D.N.Y., 2009), Defendant "submitted no evidence from which a reasonable trier of fact could find that this **stringent** burden has been met."

Under NYLL 196-a, the burden-shifting standard shifts more of the burden to the employer and requires that the employer "shall bear the burden of proving that the complaining employee was paid wages, benefits and wage supplements." See Padilla, 643 F.Supp.2d at 307 -308; *Jiao v. Chen*, No. 03 Civ. 0165(DF), 2007 WL 4944767, at *3 (S.D.N.Y. Mar. 30, 2007). Statements by employers, that the hours allegedly worked are incorrect, are insufficient to overcome this burden of rebuttal without further corroborative evidence. *Deac v. Il Postino, Inc.*, No. 12–cv–5952 (NGG)(RLM), 2014 WL 4437211 at *5 (E.D.N.Y., Aug. 15, 2014). As the trier of fact, the jury is always free to reject Plaintiff's evidence if it sees fit, based on the applicable law.

Defendant also requests that the agreement settling the overtime claims not be put before the jury – we can agree to this request, provided that there is a fair and balanced instruction to the jury that the overtime claims were settled by the parties but that settlement does not mean the overtime allegations lacked merit or that that Defendant committed overtime violations – that is for the jury to determine if Plaintiff earned the overtime wages claimed or some other amount.

### III. CONCLUSION

Based on the foregoing, Plaintiff respectfully requests that this Honorable Court: 1) deny Defendant's motion in limine in its entirety; and 2) grant Plaintiff such other, further and different relief in Plaintiff's favor as this Court deems just and proper.

Dated:  Queens Village, New York
        March 7, 2016

Respectfully submitted,

24

Abdul Hassan Law Group, PLLC

   /s/ Abdul Hassan
**By: Abdul K. Hassan, Esq. (AH6510)**
*Counsel for Plaintiff Cassandra Woods*
215-28 Hillside Avenue
Queens Village, NY 11427
Tel: 718-740-1000
Fax: 718-740-2000
Email: abdul@abdulhassan.com